THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMERALD CITY PET RESCUE,<br><br>    Plaintiff,<br><br>  v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, *et al.*,<br><br>    Defendants. | CASE NO. C24-1843-JCC<br><br>ORDER |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 21, 24). Having thoroughly considered the briefing and record, the Court DENIES the motions for the reasons described herein.

I.    **BACKGROUND**

This is a garnishment action by Emerald City Pet Rescue ("ECPR"), a pet rescue and animal sanctuary, against the insurer(s)[1] of its prior plumbing contractor. (*See generally* Dkt. No.

---

[1] According to ECPR, the insurers are Liberty Mutual Insurance Company ("Liberty Mutual") and Ohio Security Insurance Company ("Ohio Security"), who wrote and/or underwrote general commercial liability policies during the periods at issue. (*See generally* Dkt. No. 1-1.) Defendants contend that, in fact, Ohio Security issued the policies, thus, to the extent a valid garnishment action exists, it is solely against Ohio Security. (*See* Dkt. No. 24 at 18.) While not entirely clear, the record suggests this to be true. (*See, e.g.*, Dkt. No. 25 at 104–50) (insurance documents issued by Liberty Mutual indicating that Ohio Security is the coverage provider). Regardless, ECPR does not contest this assertion. (*See generally* Dkt. No. 26.)

1-1.) ECPR initiated the action after it obtained a civil judgment against the contractor, 360 Plumbing ("360"), for the alleged consequences of shoddy work at an ECPR facility. (*See generally id.*)

The present complaint alleges that ECPR engaged 360 from 2018–2022 to install plumbing at its Vashon Island equine facility. (*Id.* at 7.) The project did not go as planned. According to ECPR, 360 "failed to complete the work in a workmanlike manner." (*Id.*) Deficiencies include the following:

> 1) failure to design and build a plumbing system which consistently holds pressure, rendering certain systems unusable, (2) failure to properly repair PEX piping in the barn; leading to leaking, water damage, and electrical shorts, (3) leaking pipes, (4) failure to implement a functional water heating system, (5) failure to implement a system which passes backflow inspections, (6) failure to properly install drains, leading to pooling water, (7) improperly installed sink drains, (8) improper installation of batteries for the generator and fire system, resulting in diminished battery life, and (9) failure to fill trenching created for plumbing installation.

(*Id.* at 8.)

In 2023, prior to the instant suit, ECPR sued 360 in King County Superior Court. (*See* Dkt. No. 25 at 5–10) (underlying complaint). After 360 failed to appear, that court issued default judgment in ECPR's favor of $116,418.42, along with post-judgment interest. (Dkt. No. 21-3 at 3–5.) By this point, though, 360 had ceased operations. (Dkt. No. 250 at 63, 68.) In fact, it is now defunct. (*See* Dkt. No. 21-5 at 2) (Washington Secretary of State information). Thus, ECPR cannot collect on its judgment against 360.

But 360 had a commercial general liability policy from Liberty Mutual and/or Ohio Security which, conceivably, could cover some amount of ECPR's costs to remedy the situation. (*See* Dkt. No. 21-6) (insurance policy). So, in 2024, ECPR filed the instant complaint, naming Liberty Mutual and Ohio Security, seeking garnishment against each. (*See generally* Dkt. No. 1-1.) Specifically, ECPR now seeks (1) an order establishing coverage for the events described above, (2) garnishment of 360's policies in accordance therewith, and (3) any other relief warranted. (Dkt. No. 1-1 at 9.) The case is in a relatively early stage: the discovery cutoff is next

month and trial is set for January 2026. (Dkt. No. 20.) The parties cross-move for summary judgment. (*See* Dkt. Nos. 21, 24.)

ECPR argues it is entitled as a matter of law as to its garnishment action, including an award of attorney fees. (*See generally* Dkt. No. 21.) In responding and cross-moving, Defendants contend that, based on the policy language, coverage cannot apply to most of the damage ECPR alleges and, regardless, policy exclusions apply. (*See generally* Dkt. No. 24.) They also suggest ECPR's claim(s) are doomed by 360's late tender of ECPR's 2023 suit to Defendants (as its insurers). (*See generally* Dkt. No. 24.) In addition, Defendants note that (as a third-party creditor to 360) ECPR is not entitled to attorney fees. (*See* Dkt. No. 24 at 21.) Defendants, if unsuccessful in moving for judgment as a matter of law, argue that genuine issues of fact preclude summary judgment in ECPR's favor. (*Id.*)

## II.     DISCUSSION

### A.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering such motions, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Conversely, if that showing is made, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

### B.     Late Tender

According to 360's policy, it had a duty to notify Defendants "as soon as practicable" if a suit were brought against 360. (Dkt. No. 21-6 at 21.) It is undisputed that did not happen here.

(*Compare* Dkt. No. 21 at 8, *with* Dkt. No. 24 at 5.) ECPR filed its complaint against 360 in January 2023 and, based on 360's non-appearance, the King County Superior Court entered (a) an order of default in February 2023 and (b) default judgment in October 2023. (*See* Dkt. No. 25 at 5, 12, 21.) Yet Defendants did not receive tender from 360 until January 2024. (*See* Dkt. No. 24 at 5) (citing Dkt. No. 25 at 37). On this basis, Defendants assert the late tender rule should inoculate them from liability. (Dkt. No. 24 at 10–11.)

In general, the late tender rule provides that an insurer has no duty to defend or indemnify until tender is made. *Natl. Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 696 (Wash. 2013). In extreme cases, the rule can absolve an insurer of its duty to defend or indemnify the insured. *Id.* But this requires a showing of "*actual and substantial prejudice* from [the] late notice." *Id.* (emphasis in original). Said another way, "an insurer must perform under the insurance contract *even where an insured breaches* the timely notice provision of the contract *unless* the insurer can show actual and substantial prejudice due to the late notice." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 871 (Wash. 2008) (emphasis added).

In arguing for the extreme application of the rule here, Defendants point out that, once they received notice, they provided 360 with a defense (under a reservation of rights) shortly thereafter. (Dkt. Nos. 24 at 10–11, 27 at 3.) However, this was complicated by multiple outstanding motions, including one for contempt and another seeking a bench warrant for 360's principals (who failed to appear). (Dkt. No. 25 at 40–49, 58–61.) Nevertheless, for inexplicable reasons, Defendants critically waited until June 2024 to move to set aside default judgment already entered in the matter. (*See id.* at 3.) Based in part on this failure to "act with due diligence in moving to set aside the default order and judgment," the King County Superior Court denied Defendants' request. (Dkt. No. 21-4 at 3.)

Thus, the inability to set aside the default judgment was, at least in a significant part, Defendants' own doing. Nor is this the only issue with Defendants' argument. While in their briefing here Defendants discuss the prejudice they suffered from the late tender in the underlying state action, (*see* Dkt. No. 24 at 11) (describing the "liability defenses" they would

have asserted and/or discovery they would have sought), this is not the type of "actual and substantial" prejudice necessary to procedurally bar ECPR's garnishment action in this Court. This is because Defendants may again assert those defenses and seek discovery here.

Given these facts, the Court cannot find, as a matter of law, that the late tender rule should apply. *See Nat'l Sur. Corp.*, 297 P.3d at 890 (finding summary judgment on late tender "inappropriate" when "[d]iscovery remains to be conducted and questions of prejudice generally involve disputed facts."); *see also Mut. of Enumclaw Ins. Co.*, 191 P.3d at 876 ("Whether or not late notice prejudiced an insurer is a question of fact, and it will seldom be decided as a matter of law.").

### C. Coverage Considerations

360's policy with Defendants applies to "property damage," namely "[p]hysical injury to tangible property, including all resulting loss of use of that property." (Dkt. No. 21-6 at 11, 25.) Defendants contend that ECPR, through its garnishment action, attempts to transform a breach of contract claim (and judgment) for defective workmanship into an insurance claim for property damage. (*See generally* Dkt. No. 24.) Nevertheless, because the instant action necessarily rises or falls on the issue of coverage under Defendants' policies, the Court relies on the traditional two-step process to evaluate the claim(s) before it: ECPR must show the policy covers the loss at issue and then, to avoid coverage, Defendants must point to specific policy language excluding the loss. *Mut. of Enumclaw Ins. Co. v. T & G Const., Inc.*, 199 P.3d 376, 383 (2008).[2]

#### 1. Coverage

In asserting that 360's faulty workmanship resulted in property damage, ECPR relies on declarations from its Comptroller and Facility Manager. (*See* Dkt. Nos. 21-1, 21-2.) Those

---

[2] "Interpretation of the terms of an insurance policy is a matter of law." *Allstate Ins. Co. v. Raynor*, 21 P.3d 707, 711 (Wash. 2001). The Court interprets undefined terms in policy language as they would be read by an ordinary insurance consumer. *See Moeller v. Farmers Ins. Co. of Wash.*, 267 P.3d 998, 1002 (Wash. 2011). Inclusionary clauses must "be liberally construed to provide coverage." *Riley v. Viking Ins. Co. of Wisconsin*, 733 P.2d 556, 558 (Wash. Ct. App. 1987). "Exclusionary clauses should be construed against the insurer with special strictness." *McAllister v. Agora Syndicate, Inc.*, 11 P.3d 859, 860 (Wash. Ct. App. 2000).

persons describe water leaks, sewage flowing to the surface,[3] and certain losses of use at the equine rescue facility. (*See generally id.*) They also itemize costs incurred for a septic system re-design and installation, along with estimated costs for additional repairs, consulting, and engineering. (*See* Dkt. No. 21-1 at 4–5). These expenses are necessary, says ECPR, to remediate present damage *and* to prevent future damage. (*See* Dkt. No. 21 at 7.) This is, undeniably, "property damage" arising from an "occurrence" under Washington insurance law. *See, e.g.*, *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group*, 681 P.2d 875, 879 (Wash. Ct. App. 1984); *Palouse Seed Co. v. Aetna Ins. Co.*, 697 P.2d 593, 595 (Wash. Ct. App. 1985). But this does not end the question—it is unclear here how much of the resulting costs are for remediation versus prevention.

      Under Washington law, coverage for "property damage" does not extend to the prevention of future damage. *See Boeing Co. v. Aetna Cas. and Sur. Co.*, 784 P.2d 507, 515 (1990) ("preventive measures taken before pollution has occurred are not costs incurred because of property damage"); *see, e.g.*, *Wampold v. Safeco Ins. Co. of Am.*, 409 F. Supp. 3d 962, 970 (W.D. Wash. 2019), *aff'd*, 820 F. App'x 598 (9th Cir. 2020) (costs to avoid future slides are not "property damage"). Thus, to the extent ECPR's costs relate to prevention efforts, they do not trigger coverage under the policy.

      To establish coverage at summary judgment, ECPR must provide unrebutted evidence distinguishing its remediation from its prevention costs. ECPR fails to do so with any specificity. Turning to its Comptroller's declaration, first filed in support of ECPR's suit against 360, (Dkt. No. 21-1), it describes 360's defective work and itemizes amounts ECPR has or will expend to

---

[3] In its briefing, ECPR asserts this resulted in soil and *groundwater* contamination. (*See, e.g.*, Dkt. No. 21 at 2.) This is significant, as the contamination of groundwater (as a public resource) constitutes, as a matter of law, property damage covered under a general liability policy. *See Pederson's Fryer Farms, Inc. v. Transamerica Ins. Co.*, 922 P.2d 126, 135 (Wash. Ct. App. 1996) (citing RCW 90.44.040). But ECPR's supporting declarations and exhibits only speak to *soil* contamination. (*See generally* Dkt. Nos. 21-1, 21-2) Because, at summary judgment, the Court must make all inferences in the favor of the non-movant, *see, e.g. Larrison v. Ocean Beauty Seafoods, LLC*, 651 F. Supp. 3d 1214, 1217 (W.D. Wash. 2023), it cannot deduce that soil contamination here necessarily led to *groundwater* contamination.

1 cure those defects. (*Id.* at 3–5.) But, again, it contains no breakdown of costs between
2 remediation and prevention. (*Id.*) Nor does the Facility Manager's declaration, (Dkt. No. 21-2),
3 fare any better; rather, it simply indicates that a "new septic system" was needed, in part, to
4 "prevent future property damage." (*Id.* at 3.) These declarations are consistent with ECPR's
5 briefing, which repeatedly suggests that the amounts it now seeks to recover are (at least in part)
6 to "prevent future property damage resulting from [360's] work" at ECPR's facility. (Dkt. Nos.
7 21 at 2, 7; 26 at 5.)

        Fundamentally, while ECPR presents undisputed evidence to support some amount of coverage, that evidence does not speak to the *quantum* of coverage, meaning, there is insufficient record evidence regarding the amounts expended (or to be expended) on <u>covered</u> remediation efforts versus <u>uncovered</u> prevention efforts. For this reason, the Court cannot find, as a matter of law, the quantum of coverage which applies here. This is an issue best left for the jury to decide.

        2. <u>Exclusions</u>

        Defendants argue that "damage to property" and/or "damage to your work" policy exclusions prevent coverage as a matter of law. (Dkt. No. 24 at 14–18.) They seek summary judgment on this basis. Because this is Defendants' burden to prove, for the Court to find as such at summary judgment, Defendants must point to unrebutted record evidence on this issue. *See, e.g.*, *Becker v. TIG Ins. Co.*, 649 F. Supp. 3d 1065, 1074 (W.D. Wash. 2022).

        The "[d]amage to [p]roperty" provisions (exclusions 2.j.(5) and 2.j.(6)) exclude from coverage damage arising from 360's work *to the extent* the damage is to the portion of ECPR's property that 360 worked on.[4] (*See* Dkt. No. 26 at 7–9.) And the "damage to your work"

---

[4] The full text of the relevant "damage to property" provisions are as follows:

> <u>2.j.(5)</u>: That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or applies to property damage that occurs directly or indirectly from the insured, or the insured's contractors, while performing operations on "that particular part of real property.

provision excludes from coverage damage to 360's work arising from 360's work.[5] Again, for the exceptions to apply as a matter of law, Defendants must point to unrebutted evidence allocating ECPR's repair and replacement costs between the part of ECPR's property that 360 actually worked on (or the work itself) and that which it did not work on (such as portions of the equine rescue facility unrelated to the plumbing system). Defendants fail to do so. (*See generally* Dkt. Nos. 24, 27.)

Much like with coverage, there is again no doubt that at least a *portion* of the damage allegedly arising from 360's faulty workmanship extended beyond the limits of the equine rescue property that 360 worked on (or 360's work itself). (*See generally* Dkt. Nos. 21-1, 21-2.) But how much cannot be determined from the record presently before the Court. Thus, the impact of coverage exclusions is also an issue best left for the jury to decide.

**D.    Attorney Fees**

Finally, in cross-moving for summary judgment, the parties debate ECPR's request for *Olympic Steamship*-type attorney fees. (*Compare* Dkt. No. 21 at 11, *with* Dkt. No. 24 at 21); *see Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 811 P.2d 673 (Wash. 1991) ("[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees."). The issue here, of course, is that ECPR is not an assignee of 360's policy—it is a judgment creditor seeking to garnish 360's choses in action, namely in this instance, its insurance policy with Defendants (to the extent Defendants have a duty to

---

> 2.j.(6): That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Dkt. No. 21-6 at 14.)

[5] The full text of the "damage to your work" provision is as follows:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Dkt. No. 21-6 at 14.)

indemnify). (*See generally* Dkt. No. 1-1.)[6] Nevertheless, it seems that ECPR (if successful here) is entitled to reasonable attorney fees to perfect a controverted garnishment pursuant to RCW 6.27.230. *See Atlantic Or. Mut. Ins. Co. v. Starkweather,* 132 Wash. App. 1041 (Wash. Ct. App. 2006) (unpublished opinion) (finding that attorney fees may be warranted in a garnishment action on an insurance policy). Ultimately, this issue cannot be resolved on a stand-alone basis at summary judgment.

**III.    CONCLUSION**

For the foregoing reasons, the Court DENIES the parties' motions for summary judgment (Dkt. Nos. 21, 24) in their entirety.

It is so ORDERED this 7th day of August 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[6] ECPR provides no authority for the proposition that it, as a non-assignee of 360's rights under the policy, it is entitled to attorney fees in such an instance. (*See generally* Dkt. Nos. 21, 26.)